UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIELLA A.,[1]

      Plaintiff,

  v.                                    1:21-CV-00067-LJV
                                          DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

On January 14, 2021, the plaintiff, Daniella A. ("Daniella"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] Docket Item 1. On December 8, 2021, Daniella moved for judgment on the pleadings, Docket Item 8; on May 3, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on June 14, 2022, Daniella replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Daniella applied for Supplemental Security Income ("SSI"). SSI is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both disability insurance benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Daniella's motion in part and denies the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## DISCUSSION

### I.     ALLEGATIONS

Daniella argues that the Commissioner erred in two ways. Docket Item 8-1 at 1. First, she argues that the Appeals Council erred in rejecting several medical opinions without good reason. *Id.* at 15-18. Second, she argues that the ALJ improperly evaluated the opinion of the state agency psychological consultant, S. Jurgia, Ph.D. *Id.* at 18. This Court agrees that the Appeals Council erred and, because that error was to Daniella's prejudice, remands the matter to the Commissioner.

### II.    ANALYSIS

A reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g); *see id.* at § 1383(c)(3). "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). "If the Appeals Council fails to fulfill its obligations under [section 416.1470(b)], the proper course for the reviewing court is to remand for reconsideration in light of the new evidence." *Wilbon v. Colvin*, 2016 WL 5402702, at *5 (W.D.N.Y. Sept. 28, 2016) (citations and internal quotation marks omitted); *accord Patterson v. Colvin*, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir.

3

2015) (citing *Perez,* 77 F.3d at 46) ("[I]f the Appeals Council denies review of a case, the ALJ's decision, and not the Appeal's Council's, is the final agency decision.").

The Appeals Council must review an ALJ's denial of benefits if the claimant submits new evidence that is "relevant to the claimant's condition during the time period for which benefits were denied[,] probative," and not "merely cumulative of what is already in the record . . . ."  *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1996); *accord Williams v. Comm'r of Soc. Sec.*, 423 F. Supp. 2d 77, 84 (W.D.N.Y. 2006).  Stated another way, the Appeals Council "must consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision."  *Webster v. Colvin*, 215 F. Supp. 3d 237, 242 (W.D.N.Y. 2016); 20 C.F.R. § 416.1470(a)(5).

Evidence is "new" if it did not exist at the time of the ALJ's decision and is not merely cumulative of other evidence in the record.  *Webster*, 215 F. Supp. 3d at 242.  Evidence is "material" if it further clarifies the "severity and continuity of [the claimant's preexisting] impairments," *Gold v. Sec'y. of Health, Educ. and Welfare*, 463 F.2d 38, 41-42 (2d Cir. 1972), and there is "a reasonable probability that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently." *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  If a reviewing court deems evidence that might relate to the period at issue to be new and material, it should remand the matter to the Commissioner.  *See Webster*, 215 F. Supp. 3d at 243; *Barbara W. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 296, 303-04 (W.D.N.Y. 2021).

Here, Daniella submitted four new medical opinions for the Appeals Council to consider when deciding whether to review the ALJ's decision: (1) an opinion from

Katherine Fox, Nurse Practitioner, dated November 7, 2019, Docket Item 6 at 23-24; (2) an opinion from NP Fox dated March 11, 2020, *id.* at 81-85; (3) an opinion from Scott Grefarth, Licensed Clinical Social Worker, dated March 27, 2020, *id.* at 86-90; and (4) an opinion from LCSW Grefarth dated October 20, 2020, *id.* at 52-53.

### A. NP Fox's November 7, 2019 Opinion

The Appeals Council did not accept NP Fox's opinion dated November 7, 2019, because it "did not show a reasonable probability that it would change the outcome of the decision." *Id.* at 11. But the Appeals Council did not even need to address that opinion because it was not "new."[4] *See Webster*, 215 F. Supp. 3d at 242. The ALJ left the record open from the date of the hearing, November 22, 2019, through December 6, 2019, and Daniella submitted additional medical records during that period. *See* Docket Item 6 at 92. Nevertheless, Daniella failed to provide this opinion—dated two weeks *before* her hearing—either at the hearing or during the additional period when the record was left open. As such, the Appeals Council was not obligated to consider NP Fox's opinion of November 7, 2019.

---

[4] The copy of the ALJ's decision in the administrative record is undated. *See* Docket Item 6 at 106. The Appeals Council stated that the ALJ issued her opinion on February 3, 2020. *Id.* at 6. The court transcript index and Daniella's motion for judgment on the pleadings state that the decision was issued on January 29, 2020. *Id.* at 2; Docket Item 8-1 at 1. The difference between these two dates does not change the Court's analysis: either way, the ALJ's decision was issued long after NP Fox's November 2019 opinion.

5

### B. NP Fox's March 11, 2020 Opinion and LCSW Grefarth's March 27 and October 20, 2020 Opinions

Daniella also submitted to the Appeals Council an opinion from NP Fox dated March 11, 2020, as well as opinions from LCSW Grefarth dated March 27 and October 20, 2020. Docket Item 6 at 52-54, 81-90. The Appeals Council did not accept these opinions because the Appeals Council asserted that they did not relate to the period at issue. *Id.* at 11. That was error.

Unlike NP Fox's November 2019 opinion, all three 2020 opinions were "new." *See Webster v. Colvin*, 215 F. Supp. 3d 237, 242 (W.D.N.Y. 2016) (noting that "new" evidence must not have existed when ALJ made her decision and must not be "merely cumulative" of the record). With dates of March 11, March 27, and October 20, 2020, the three opinions all were generated after the ALJ's decision earlier that year. *See* Docket Item 6 at 2, 53, 85, 90; *see also Webster*, 215 F. Supp. 3d at 242 ("Here, the post-hearing evidence was clearly "new" because it did not exist until after the ALJ's decision . . . ."); *Lovell v. Saul*, 414 F. Supp. 3d 398, 403 (W.D.N.Y. 2019) ("Plaintiff's favorable disability determination was decided on December 14, 2016, after the February 11, 2016 determination. It was not in existence at the time Plaintiff's prior disability claim was decided.").

What is more, the opinions included new information and therefore were not merely cumulative. *See Barbara v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 296, 302 (W.D.N.Y. 2021). In fact, LCSW Grefarth's opinion dated October 20, 2020, was the first "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" that he completed on Daniella's behalf. Docket Item 6 at 52-53.

6

Although NP Fox and LCSW Grefarth had previously completed mental residual functional capacity questionnaires, *see* Docket Item 7 at 391-96, 559-64, the new questionnaires differed substantively from the earlier ones.  For example, in May 2019, NP Fox had found that Daniella was seriously limited in her ability to work in coordination with or proximity to others without being unduly distracted and that she was unable to meet competitive standards in her ability to make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  *Id.* at 393.  But by March 2020, NP Fox found that Daniella's ability to work in coordination with or proximity to others without being unduly distracted was unable to meet competitive standards, and she found that Daniella had no useful ability to function in the areas of making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, accepting instructions and respond appropriately to criticism from supervisors, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  Docket Item 6 at 79.  So by the spring of 2020, NP Fox opined that Daniella's condition was significantly worse than it had been.

Along the same lines, LCSW Grefarth found on March 27, 2020, that Daniella suffered from: (1) deeply ingrained, maladaptive patterns of behavior; (2) pathologically inappropriate suspiciousness or hostility; and (3) involvement in activities that have a high probability of painful consequences which are not recognized.  *Id.* at 87-88.  But he

7

had not previously recognized those symptoms on December 4, 2019.  *See* Docket Item 7 at 560.  So like NP Fox's opinion, LCSW Grefarth's opinion was that Daniella's condition had worsened.

The three new opinions also were "material" as they further explained the nature of Daniella's anxiety, depression, and PTSD, all of which the ALJ found to be severe, medically determinable impairments.  Docket Item 6 at 98-99.  For example, in the new records, LCSW Grefarth noted that Daniella was known to harm herself and to threaten others when she was stressed.  *Id.* at 89.  That conflicts directly with the ALJ's finding that Daniella had "no documented history of physical or verbal outbursts against others," *id.* at 101, and it suggests that Daniella's mental impairments might well have been more severe during the relevant period.  *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Based on the new evidence submitted by Ms. Pollard, such as the fact that David has threatened to kill a teacher and has since been hospitalized in a psychiatric ward, the ALJ might be persuaded to find that, during the relevant time period, David was actually extremely limited in his ability to interact and relate to other people."); *see also Barbara W. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 296, 303 (W.D.N.Y. 2021) ("In sum, the new evidence presented by Plaintiff at the very least suggests that, during the relevant time period, her condition was more serious than previously thought.") (internal quotation marks and citation omitted).  So based on that new information, the ALJ might well have concluded that Daniella had more than just a "moderate" limitation in interacting with others and may have adjusted her RFC accordingly.

It is true that the ALJ found NP Fox's and LCSW Grefarth's earlier opinions to be unpersuasive.  *See* Docket Item 6 at 107-08.  But that does not mean that she would

8

have reached the same conclusion as to the later opinions, especially because of the substantive differences just noted. Because the providers' new opinions give a more complete picture of Daniella's mental impairments, there is a reasonable probability that they would have influenced the ALJ's ultimate RFC determination.[5] *See Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

The Commissioner argues that Daniella has not given good reason for not having submitted the three opinions to the ALJ. Docket Item 9-1 at 15. But those opinions were rendered shortly after the ALJ issued her decision. *See* Docket Item 6 at 2, 53, 85, 90. So Daniella could not possibly have submitted them sooner. *See Lisa*, 940 F.2d at 44 ("'Good cause' for failing to present evidence in a prior proceeding exists where, as here, the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding."); *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Because the new evidence submitted by Ms. Pollard did not exist at the time of the ALJ's hearing, there is no question that the evidence is 'new' and that 'good cause' existed for her failure to submit this evidence to the ALJ.").

---

[5] The ALJ concluded that Daniella had the RFC to perform a full range of work at all exertional levels with the following limitations:

> [Daniella] may occasionally climb ramps and stairs; she must avoid concentrated exposures to unprotected heights and machinery with external moving parts; she can sustain attention and focus sufficient to complete simple tasks; she is limited to superficial interaction with coworkers and supervisors and cannot work in a team or tandem setting; she cannot work around the general public; and[] she can adapt to minor and infrequent changes to tasks that are easily explained.

Docket Item 6 at 102.

The Commissioner also argues that the Appeals Council was correct in declining to consider these three opinions because they did not relate to the period at issue. *See* Docket Item 9-1 at 12, 14. But the Appeals Council cannot refuse to consider new and material evidence on this ground without providing more explanation. *See Barbara W. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 296, 303 (W.D.N.Y. 2021) ("The explanation given by the Appeals Council—which consisted of a cursory statement that the evidence was outside the period of disability—does not address this issue."). So the Appeals Council erred as a matter of law by not considering these three opinions solely based on the cursory conclusion that they did not relate to the period at issue.

And that is especially so here, where the records address mental health issues which ebb and flow and therefore are more likely to reflect limitations that might not have been noticed at an earlier time. *See Daniel T. v. Comm'r of Soc. Sec.*, 2022 WL 950069, at *7-8 (W.D.N.Y. Mar. 30, 2022) ("The Second Circuit has further indicated that an ALJ also should not, when dealing with a mental health condition that is cyclical or fluctuating, rely on 'a few isolated instances of improvement' as proof that a claimant is capable of working . . . .") (citing *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) and *Colgan v. Kijakazi*, 22 F.4th 353, 352 (2d Cir. 2022)). By its very nature, mental illness is not static. *See Estrella*, 925 F.3d at 97 (discussing how, in the context of mental illness, a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health). So the opinions from March 2020 might well relate to at least part of the relevant period which ended in January or February 2020 when the ALJ rendered her decision. *See supra* n.4.

In other words, while it is possible that the 2020 opinions from NP Fox and LCSW Grefarth might not be relevant to the period at issue, it is just as possible that the opinions clarify Daniella's anxiety, PTSD, and depression, all of which the ALJ found to be severe impairments during the relevant time period. *See* Docket Item 6 at 98; *see also Barbara W. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 296, 303-304 (W.D.N.Y. 2021) (quoting *Carrera v. Colvin*, 2015 WL 1126015, at *10) (W.D.N.Y. Mar. 12, 2015)) ("In sum, the new evidence presented by Plaintiff at the very least 'suggests that, during the relevant time period, [her] condition was more serious than previously thought.'"); *Webster v. Colvin*, 215 F. Supp. 3d 237, 243 (W.D.N.Y. 2016) ("A reviewing court cannot assess whether the new evidence relates to the period on or before the ALJ's decision . . . . Accordingly, this matter must be remanded to the Commissioner for reconsideration in light of the new evidence.") (citation omitted); *Poler v. Comm'r of Soc. Sec.*, 2020 WL 1861920, at *6 (W.D.N.Y. Apr. 14, 2020) (finding that "[i]t is equally possible . . . that the new evidence clarifies a pre-hearing disability and suggests that [Plaintiff's] condition was more serious than previously thought during the relevant time period.") (internal quotation marks and citation omitted). And for that reason, the Appeals Council erred in rejecting those opinions.

For all those reasons, remand is necessary so that the ALJ can address NP Fox's and LCSW Grefarth's 2020 opinions in formulating Daniella's RFC.[6]  *See Newbury v. Astrue*, 321 F. App'x 16, 18-19 (2d Cir. 2009).

---

[6] The Court "will not reach the remaining issues raised by [Daniella] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020) ("However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further

11

**CONCLUSION**

For the reasons noted above, the Commissioner's motion for judgment on the pleadings, Docket Item 9, is DENIED, and Daniella's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:      January 11, 2023
            Buffalo, New York

                                                                */s/ Lawrence J. Vilardo*
                                                                LAWRENCE J. VILARDO
                                                                UNITED STATES DISTRICT JUDGE

---

administrative proceedings is necessary, the Court declines to reach these issues.") (citations omitted).